United States v. Eliseo Gomez-Diaz Mr. Ng, before you begin, I note also that you were appointed under the Criminal Justice Act in this case, and I want you to, as with previous counsel, I want you to know how much the Court appreciates your service and your representation in this matter. Thank you. You may proceed. Well, may it please the Court, Paul Ng, on behalf of Mr. Gomez-Diaz, he was convicted of production of child pornography. We appeal the conviction in his sentence. The case took place upstairs before Judge Magnuson. I've raised three issues, two of which I'd like to talk about today, the lesser-included offense of possession vis-a-vis production and the enhancement for obstruction. I'll rely on the briefs for the improper argument that the government made in rebuttal. The facts can be recited in a minute or less. Mr. Gomez-Diaz was in the restaurant trade. He met his girlfriend there. They began living together. She had a little brother about age eight, and Mr. Gomez-Diaz started a relationship with the brother that turned sexual. How long it lasted is disputed, but there's no question that it was sexual. And then what happened in the case, which brings us here, is on the last day, they had a cell phone out, the ubiquitous iPhone or Android, I think it was an Android, and the boy and Mr. Gomez-Diaz took pictures of each other having oral sex. The girlfriend found the image, called the police. Mr. Gomez-Diaz was arrested. He confessed and was charged in Hennepin County District Court with criminal sexual conduct. The government trolled for cases and brought it to federal court so they could get the additional time, 15 years. This was an aberrant type of case, though, for what we usually see in child pornography issues. He didn't have the mania that we usually see. There was only six images on his phone. A couple other were in the metadata that were unidentified at the time. There was no hoarding. He didn't visit any websites. He didn't converse in the chat rooms that we often see. He didn't distribute or send the images anywhere. So the conduct was episodic versus chronic, and it didn't feature the compulsivity that we see. In representing him, the government insisted on a 15-year plea, and all the plea agreements on these are 30 years, frankly. Given the isolated nature of the photographs, it appeared to me that he also possessed child pornography and that he wasn't typical of the people we see. So I prepared Mr. Gomez-Diaz for trial. We worked on his testimony. I told him all about Dunigan v. United States. I told him that, as we tell all the clients, that if you want to testify and not get those enhancement points, you can admit the offense but deny your intent. And that's exactly what he did, and he was cross-examined. He was brought to trial, denied the length of the abuse, but it really didn't matter. He admitted the crime. And I had him say that the purpose of having the sex wasn't necessarily to produce, but he did possess the image. So I made the defense that I thought I had to make through his testimony. I asked for the lesser included, and then we got to the charge conference, and the court said, well, I think it fits on the facts. I've quoted the judge's comments to us, but the law says that the elements are somewhat different, and therefore I'm not going to give the instruction for the lesser included. He didn't say how the elements were different. He didn't say why the elements are different. The government agreed with him but didn't articulate why the elements were different either. Do you think that they are? Yeah, I really do, and I'll tell you why. The gravamen of each offense is that you have a pornographic image, and we conceded that this was a pornographic image. You don't have to look for them if you want, they're in the record, but clearly that's the image. The crime of producing the image is that you take a picture of a child that is sexually explicit under the statute, and that's what he did. And the instant he took a picture of the child, he possessed the very same picture of the child. And the elements, I think the case law is a little bit unfulfilling, in that they're mostly unpublished, but the district courts and the circuit courts have taken the different varieties or different manners or means of committing the offense, and then indicating that the offense wasn't committed in this way, and therefore the elements are different between the two counts. Counsel, I think your argument is really as applied. They were the same act, or they were similar acts, or one included the other. And I don't think that's how we look at it. I think we just look at the elements. It's kind of like a Blackburger type of analysis. We look at the elements, we compare them, we try to figure out if they're different, and if they're different, and they each include an element that the other doesn't, then they're not lesser included. Well, I appreciate the Blackburger analysis, but for example, the case law is not fulfilling here though. Let me address that for you, if I could. I mean, the last case that came out of the Sixth Circuit is Kniffley, K-N-I-F-F-L-E-Y. And what the circuit said, where the defendant wants the possession as a lesser included, is they say, well, the elements are different as you just said, but then they skew the statute. They say, well, quotes, it's possible to produce child pornography under 2255 by persuading a minor to take explicit photos of themselves. Of course, that didn't happen here. Or by transporting a minor with intent that someone else takes the pictures, but that didn't happen here either. You could certainly commit the crime that way, but you can't divorce the crime from the facts. And I appreciate on the one hand Blackburger is technical, but every case, including this one, talks about the facts. And then the secondary claim the Sixth Circuit makes is that someone may be certainly guilty of possessing or distributing child pornography without having played any role in its production. Well, of course that's true, but it's not true here. And vice versa though. You can produce without possessing. Say you have a webcam that's set on the internet, so you could theoretically produce without possessing the images. Right, and then there's a clause in the possession that live streaming is possession though. I mean, there is that part of the statute that was amended to say you can live stream. I mean, the problem here is that we've lost track of the gravamen of the case. The gravamen is the image. That's the crime. That's what Congress was trying to address. Well, let's see if this would be more fulfilling, which is the underage component. So for possession, you have to know the victim is underage. And for production, you don't need to know that the victim needs to be underage, but there's no knowledge requirement attached to it. And so that's an entirely different element there. Well, I think for production, you also have to know, I think the case law says that you know, the excitement case from the 40s, I believe. The case law would insist on the knowledge component anyway, even though it's not in the statute. But I conceded the knowledge. I mean, the difference in our case is I conceded all the elements. So I removed the elements. To give the lesser included, as you requested of the district court, would we have to branch out into new law? Are we going directly against what the circuit's done, what the Supreme Court has told us? Are we going to have to step a bit out of line? Well, I'm all for new law, of course. But I don't think you have to step too far out of line. What I would like to see the opinion say is that you can't divorce necessarily the elements from the facts. And all the opinions we've read discuss the facts. And in this is totally different for him. And frankly, I do think the case law is wrong in all due respect to everybody else that's decided this. But it's an interesting issue in this case. And it's an interesting issue in the context of the iPhone. And no one's caught up with the technology here, which makes the production of the possession occur instantaneously with the same image. We just don't have that addressed in the statute, never have. And that's what we need to do. And frankly, an opinion that says that you possess and produce at the same time would be not only refreshing, but may change to the statute being changed. Why isn't that a question for Congress, though? Congress needs to update the statute to reflect emerging technologies. That's usually what ends up happening. And so if it truly is a lesser included offense, they need to change the elements so that it reflects the fact that you possess and produce at the same time. Well, you can have a split in the circuits and you might get relief in the Supreme Court, which would be ideal. But I mean, I think that Congress does reflect the opinions of the Eighth Circuit and all the other circuits. I mean, the branches are supposed to and do listen to each other. And if you wrote an opinion saying this is a confusing area of the law, we'd like to have this straightened out and the image is the same as the one that's produced, I think that would be quite helpful. I mean, it's really a sentencing issue. The I lost the case because I got up and said to the jury, he possessed the possessed the image and he didn't produce it. And of course, I didn't get the jury instruction. So they came back in 20 minutes. And so the theory of the case was eviscerated by the judge's ruling, too. It was unfair. I'm really what I was really trying to do is cut his time down to 10 years instead of 30, which is what we're supposed to do. Sure, you have more to say. No, I'd like to get to this obstruction thing. But I'd like to hear from you on the obstruction, because I'm I have some questions about what, in fact, was the basis for the obstruction of justice enhancement. Can you help me through that? Well, I can. And there wasn't one because he never made a record. You know, the first there were two two bases. He told the child to lie and never say to anyone, I'm having sex with you. But that is not a basis because it didn't occur during an investigation, which is what you have to have. I mean, in order to obstruct, you've got to know that they're investigations taking place. And that that was the Bender and the Parker decision, which you joined in that mill of its decision, which they cited in there. So there was no active investigation. He got arrested. He confessed. He never talked to the kid again. If he had talked to the kid again while he's in jail and said, don't testify against me, fine. So is there any so there's is there any evidence of any of those kinds of statements made to the family members or any? So then are we are we relying on a possible perjury finding? Right. And so that gets us to perjury. And there is no perjury here. First of all, you got to make a finding of perjury. Our case was pretty. Yeah, it's really great. And I told I told the judge, you know, is a wonderful judgment in making findings. I said, you've got to make a finding of perjury. I want a finding under done again. He refused to do it. He just relied on the on the PSI, which said, well. He had he had contradictory trial testimony, so he gets two points and the contradictory trial testimony was a that he may have abused the kid. Well, the client said he abused the kid for for eight weeks and the child during therapy said it happened for two years. But the abuse was admitted. Is that the only basis? Well, the second basis was that he only took those six pictures and they found a couple of pictures in the met with metadata that didn't work. And it still has to be a material. Why? I mean, you still have to have some kind of material. It has to matter somehow. What difference does it make in a context of the production case, whether or not the defendant abused the child for six to eight weeks or two years? He took the pictures. That's the crime. It's not a sex abuse prosecution. So I mean, the testimony about how long the abuse had lasted that came through, not the victim, but a caseworker of some what came through a therapist. I objected to it. And then the testimony was significantly not credited. I mean, we got to the sentencing here and the judge didn't want to hear from the therapist. I objected. They they listened to the testimony. And the therapist said that she had interviewed the child 30 times. You know, I listed the science on cross and read, read, questioning child over and over again, changes the child's memory, which is standard science in the Sisi and Brook literature. And that the child was talking about fictitious sisters, fictitious people, people in the closet. He wasn't accurate at all, but he did. But the important point for our purposes is the judge did not credit the testimony or make a finding that the testimony was significantly different than Mr. Gomez Diaz testimony at trial. And so so there is no finding and it, one can say, well, I got a departure of 10 years, but historically, if we, if we get a reversal here, he will get less time off for those two points from judge Magnuson because he did the exact same thing with the Bender and Parker remand. Uh, he gave Mr. Bender two, two years off or a year off. I can't remember for the reversal on the same grounds with the same idea and the same principle of law. I mean, this is really frustrating. You, you file the, the, the briefs. You say, this is the law. This is exactly what you got to do. And he refuses to do it. And he says, well, I've listened to everything. I'm going to just sentence him anyway. But there is no record of perjury. There can't be. And he didn't, he didn't lie. This was carefully, I mean, it was carefully tailored testimony, frankly, practiced and practice. He's a 14 year old. He's a 20 some year old guy. That's really 14. And Mr. Gomez Diaz went through the eighth grade. We had to practice and practice and practice to get his testimony. And he did not, he did not commit perjury. Thank you. I reserved three minutes. I'll see you soon. Can you please support counsel? My name is Lisa Kirkpatrick. I'm an assistant us attorney here in Minnesota. The defendant's counsel just referred to the four photos that were found in his cell phone's cache storage. And he said, what difference does it make? Makes all the difference in the world in this case. The defendant's theory of defense was that he did not intend to produce the child pornography that was charged in the indictment. It just happened. That's what he said. The camera just happened to be there while he was sexually abusing the victim. And it was more of an aside. It was aberrational. That was his theory of defense. So the evidence that he in fact had taken photographs, sexually explicit photographs of the victim on a prior occasion and had deleted them, runs head on into his theory of defense that the purpose was not to produce sexually explicit images of the victim. Let's assume that you're right, that he lied. What do we do with the fact that there's no express perjury finding? All that happened was there were objections to the pre-sentence report and Judge Magnuson says I overruled them, game over. I mean, that's a problem, isn't it? It's a problem and it would be better if the district court had made specific findings. But this court had in cases such as Esparza, which is cited in the government's brief, has affirmed where the only conclusion, where the record is unequivocal and the only conclusion to be drawn from the record is that the defendant committed perjury. That's exactly what we have here. He specifically stated he had never taken any sexually explicit photos of the victim other than the six charged in the indictment. But the evidence was to the contrary. There were four in the cache storage. They had previously been deleted. They showed the victim with his pants down, his shirt up and his penis exposed. There's no way to construe that as having been a mistake. It's not the type of evidence that would be a mistake, particularly in light of his motive to lie and it is certainly material when his theory of defense is he did not act with the purpose of producing child pornography. But your argument really is it's so obvious that this was a material lie that really the fact that the district court didn't make a perjury finding is almost harmless error. He basically would have made it had he actually done it, he would have reached the same conclusion so we can assume the record as if he made it. That's part of my argument, your honor, and that is exactly what this court held in Esparza. That remand would be a waste of time. The second part of my argument on that finding issue is twofold. First of all, the facts and the perjury issue were directly in front of the district court and that's because the findings directly in front of the district court. So when the district court overruled his objections and adopted the PSR, he knew what he had to do. He knew what the issues were in front of him and we can assume from his finding applying the obstruction of justice enhancement that he knew and found that perjury was committed here. And secondly, the PSR specifically states perjury as the basis when it outlines the four things the defendant testified falsely about, the length of the abuse, the existence of prior images having been taken, threatening the parents, and there was one other basis that's escaping me at the moment. The PSR, that paragraph, I think it's 16, states that obstruction of justice enhancement is proper where there's perjury. So there's no question here that this district court knew that it had to find perjury in order to adopt, in order to apply the obstruction of justice enhancement. What about the threatening of the victim though? I remember, and you may have mentioned this, the threatening of the victim was another ground at least that was facially plausible as a grounds to do obstruction of justice. It was. The probation officer outlined two bases. One was the lies, the perjury during the trial, which also included the threats to the victim's family. And the second basis the probation officer outlined were the threats to the victim as having prevented him from disclosing it earlier. The government isn't relying on the threats themselves in this appeal. The government is relying on the perjury here. And the perjury isn't simply, the defendants really never argued that these statements, if true, didn't constitute perjured testimony. In front of the district court, what he argued is you don't have any evidence the victim didn't testify at trial. But a couple of things. First, the defendants testimony was inherently incredible. The district court at the beginning of the sentencing hearing said it didn't need to hear from his therapist, Diane Grinnell, because he had sat through the trial. Anyone who heard that testimony would say it was incredible. He said that, for instance, the eight-year-old child was the sexual aggressor. That the defendant, he testified that he had tried to stop the abuse, but that the eight-year-old kept coming at him. He stated that there was never any anal sodomy. Well, the evidence in this case, through the therapist at the sentencing hearing, and I'm moving beyond at this moment the inherent incredibility of the testimony, it wasn't simply that the victim reported the abuse had occurred over two years, as opposed to the one month that the defendant testified to. The therapist also talked about how the victim wasn't able to have a bowel movement without his rectum bleeding for a month. So it's not simply the statements. There's more. Counsel, I want to go back to the threatening of the victim. Doesn't that, I know you're not relying on it, but doesn't that make it more important for a perjury finding? And I'll tell you why. You know, we have to conduct meaningful appellate review and if we, I realize that we only have one before us because of the government's litigating position, but suppose the government had taken a different litigating position. We now have two different bases and we have no idea on which ground the district court actually imposed the obstruction of justice enhancement and no specific findings at all. So how are we supposed to conduct meaningful appellate review? We actually do know what the district court did because the district court specifically adopted the findings and rec calculations in the PSR in total. That's what it said. So we know the district court applied the obstruction enhancements on both grounds advocated or recommended by the probation office. One may or may not have been error, the threats issue, but the other one is clearly established here that the defendant did perjure himself. So you think by adopting the PSR, the district court necessarily was making the finding that both of them, not one or the other, but both of them were valid grounds for the enhancement? I believe so because the district court stated he was adopting it in total. Those were the district court's words of sentencing. Did it make a difference on the offense level? On the offense level, no. It was, well it was, the total offense level was 51. Obviously that's above the highest level. So no, it didn't, you know, if you're parsing it apart like that. But with regard to the two bases, that also didn't matter. It's only one obstruction of justice enhancement of two levels regardless of which basis formed the underlying foundation for it. The pre-sentence report didn't seem to go through the analysis, the perjury analysis like our cases have said is a good idea to do if you're going to do an obstruction of justice. Is just putting out the statements that contradicted other information, is that enough when it's perjury that we're talking about? Just identifying what was contradicted? Probably Your Honor, but in this case the PSR also says the word perjury. And everybody knows what perjury is. And particularly in this case where the issue was squarely presented the district court. The district court, Mr. Eng stated while he was standing up here that he asked the court for the findings. He told the district court, you have to make a finding that the testimony is willfully false and material. The district court knew exactly what it needed to do. And of course this is a very experienced district court. Yes, we wish he would have made specific findings. But the fact he doesn't, can't be read in a vacuum here. He knew what he needed to do in order to apply that obstruction of justice and in adopting the PSR he did just that. If Your Honors don't have any questions about the obstruction, I did want to comment briefly on the alleged prosecutorial misconduct here. There's no question that the prosecutor's comment was ill advised. But it wasn't per se improper. And it's important to note that. This court held in both the Rodriguez case which is cited by the defendant as well as in the Al-Aboudi case cited in the government's brief. That in context, if a prosecutor's statement that the jury speaks for the victim or that the prosecutor speaks on behalf of the victim, if in context that is calculated to inflame the jury's emotions, then it's improper. And in context it wasn't improper here. We know the context. We don't have to guess at it. The prosecutor stated that the defense counsel said in opening that he spoke on behalf of the defendant. You, jury, you speak on behalf of the victim. It was an attempt, again, perhaps ill advised, but it was an attempt to mirror or parallel the construction of the defense counsel's argument. And when you- The defendant has a right to have someone speak on his behalf. Absolutely. It is true that he speaks on behalf of the defendant. And I'm not asking this court to countenance the comment, but it wasn't improper in the context in which it was made. Again, it was probably ill advised, but it wasn't improper. And when you look at the rest of the closing argument, there's not even a hint of impropriety there. And when the government ended its closing argument on rebuttal, it asked the jury to return a specific words, find him guilty because he's guilty. Not because you speak for the victim, not because you're outraged by the abuse, but because the facts of the case require a finding of guilty. He admitted he did it. And so in the fact that the defendant hasn't even attempted to show prejudice here, despite recognizing the standard, despite having replied to the government's response of brief, the fact he didn't even attempt to make that, I think speaks volumes not only as to the lack of any prejudice here, but also the basis for even raising the argument. And your honors, I think that the issue, the lesser included is a very straightforward issue. It's been answered by the Supreme Court in the Schmuck case as well as others. This is a textual comparison. We look at the elements. We don't look at the facts. The approach the defendant advocates in favor of has been directly repudiated by the Supreme Court. This isn't a close call. Possession is not a lesser included. Even if he, in fact, did possess the images he produced. And I just want to make one final point, but of course I'm happy to answer any questions. This isn't an issue of the law needing to catch up with the technology. There's really no difference between an iPhone and a camera. A person who produced child pornography using a camcorder back in the 80s is doing the exact same thing that a defendant did with an iPhone. The fact people happen to carry them doesn't change it. Technology hasn't emerged in a way that changes the child pornography statutes. In the Kniffley case itself, which was an older prosecution, the device at issue there was a digital camera. Those have existed for a long time. There's nothing different about the iPhone that would change the analysis here. Thank you. Does counsel have any time remaining? I think I'm done. Take two minutes. Thank you. The court never credited the therapist. To say that the testimony of Mr. Gomez-Diaz was incredible is not in the record. The court never made that finding. It was basically a child testifying to the jury, and there was nothing incredible about it when he admitted the offense. The therapist's statements were incredible, given the science of talking to children and the repeated interrogation. I think the case is about doing the law right in many respects. The sentencing process should be done correctly. When it's not done correctly and findings are not made that are required, there's a certain utility to reversing, so that the next case they are done correctly. The fact that Judge Magnuson is an esteemed member of the court and a very nice man doesn't mean that he didn't commit reversible error here. He did. To imagine what his thought process was, or that he found perjury in his mind without saying it, or found that the testimony was false without saying it, is assuming things that are really unfair to everybody. Unfair to him and unfair to Mr. Gomez-Diaz. Finally, the government's argument that the jury should be the voice is clearly improper. The government perhaps speaks for the victim, but the jury never speaks for a victim and can't be encouraged to do that. We ask you to reverse. Thank you, counsel. I appreciate your arguments this morning. The case is submitted. Does that conclude our cases for this morning? Yes, Your Honor. Very well. The court is in recess until further call.